The Honorable Jim Yonally State Representative, 16th District 10039 Mastin Drive Overland Park, Kansas 66212
Dear Representative Yonally:
You request our opinion regarding the application of residency requirements to stockholders of corporations seeking to obtain a micro-brewery license in this State. You preface your request upon an understanding that the Division of Alcoholic Beverage Control is currently interpreting K.S.A. 2005 Supp. 41-311(f) as requiring fifty percent or more of the stockholders of a corporate micro-brewery license applicant to be current Kansas residents and to have resided in Kansas for at least four years immediately prior to submission of the application. Initially, you question whether interpreting and applying the statutes in this way would constitute an unconstitutional impediment to economic development and competition. You observe that while this Office has previously declined to find such a residency requirement unconstitutional,[1] that opinion predated the federal district court decision in Glazer's Wholesale Drug Co.,Inc. v. State of Kansas,[2] the 2001 amendments to K.S.A.41-311, the enactment of K.S.A. 2005 Supp. 41-311b and the United States Supreme Court's decision in Granholm v. Heald.[3]
You also question whether these 2001 amendments to the Liquor Control Act[4] apply to applicants for micro-brewery licenses. We address your questions in reverse order.
In response to the federal district court decision inGlazer's, the 2001 Kansas Legislature enacted Senate Bill No. 178.[5] Section 1 of this bill removed the residency requirements associated with distributors' licenses; it did not amend or remove the residency requirements for micro-brewery licenses. However, Section 1 also added the following requirement for all license applicants under the Liquor Control Act:
 "(a) No license of any kind shall be issued pursuant to the liquor control act to a person:
. . . .
 "(13) who does not provide any data or information required by section 2, and amendments thereto."[6]
Section 2,[7] now codified at K.S.A. 2005 Supp. 41-311b, requires any applicant for licensure who is not a resident at the time application is submitted or who has not been a Kansas resident for at least one year prior to submission of the application to provide fingerprints, certain financial information and a financial records release, and submit to a national criminal history record check. The clear, unambiguous language of this statute applies regardless of any residency requirement found elsewhere in the statutes, but only to those applicants who are not Kansas residents at the time application is submitted or who have not resided in Kansas for at least one year prior to submission of the application. Applicants who currently reside in Kansas and who have resided in Kansas for one year or more immediately prior to applying for a license are not subject to this provision. The provisions of Section 2 are not limited to distributor license applicants. This view is supported by the simultaneous and corresponding amendment to K.S.A. 41-319, which applies to all applicants for licensure under the Liquor Control Act.[8] K.S.A. 2005 Supp. 41-311b does not override or replace any residency requirements, but simply places an additional requirement on all applicants who are not Kansas residents or who have not been Kansas residents for one year prior to submitting an application under the Liquor Control Act.
We turn now to the issue of whether a residency requirement for obtaining a micro-brewery license constitutes an unconstitutional impediment to economic development and competition in violation of the Commerce Clause of the United States Constitution.[9] Initially, we note that K.S.A. 2005 Supp.41-311(f)(1), (2) and (6) clearly require a corporate applicant for a micro-brewery license to demonstrate that at least 50% of the corporate stock is owned and controlled by Kansas residents who have been Kansas residents for at least four years immediately preceding the date of application.[10] We see no other way to read that statutory requirement. Thus, the issue is whether this provision is unconstitutional on its face, rather than as applied.
In its most recent decision involving application of the dormant Commerce Clause to states' liquor laws, Granholm v.Heald,[11] the United States Supreme Court analyzed two states' laws allowing in-state wineries to sell wine directly to consumers in that State while at the same time prohibiting out-of-state wineries from doing so. The majority[12] held that those laws "discriminate against interstate commerce in violation of the Commerce Clause, Art. I, § 8, cl. 3, and that the discrimination is neither authorized nor permitted by theTwenty-first Amendment."[13] The Court prefaced its opinion on its belief that "the object and design of [these States'] statutes is to grant in-state wineries a competitive advantage over wineries located beyond the States' borders."[14] The Court first discussed the Commerce Clause generally:
 "Time and again this Court has held that, in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate `differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.' This rule is essential to the foundations of the Union. The mere fact of nonresidence should not foreclose a producer in one State from access to markets in other States. States may not enact laws that burden out-of-state producers or shippers simply to give a competitive advantage to in-state businesses. This mandate `reflect[s] a central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation.'
 "The rule prohibiting state discrimination against interstate commerce follows also from the principle that States should not be compelled to negotiate with each other regarding favored or disfavored status for their own citizens. States do not need, and may not attempt, to negotiate with other States regarding their mutual economic interests. Rivalries among the States are thus kept to a minimum, and a proliferation of trade zones is prevented."[15]
The Court found the two statutes at issue to discriminate between in-state and out-of-state wine distributors. It then considered whether the laws were saved by Section 2 of theTwenty-first Amendment, which provides:
 "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."
After reviewing its own precedents and the history of theTwenty-first Amendment, the Court concluded that theTwenty-first Amendment does not displace the rule that States may not give a discriminatory preference to their own producers.[16]
However, the Court did not end its analysis there. "We still must consider whether either State regime `advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'"[17] Ultimately, though, the Court found the States' arguments in this regard, that the distinction was necessary to keep alcohol out of the hands of minors and to facilitate tax collection, unconvincing.[18]
In Glazer's Wholesale Drug Co., Inc. v. Kansas,[19] the United States District Court for the District of Kansas struck down the residency requirements for distributors' licenses found in K.S.A. 41-311(d).[20] The Court first set forth its understanding of how statutes are to be analyzed under the Commerce Clause:
 "The United States Supreme Court has developed a two-tiered approach in analyzing challenges to state regulations based on the dormant Commerce Clause. As the following discussion establishes, state laws that discriminate against interstate commerce are more strictly scrutinized than those that only incidentally burden interstate commerce. `Discriminate' has been defined by the Supreme Court in this context as `differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'
 "Under the first tier, nondiscriminatory regulations having only incidental effects on interstate commerce are held valid unless, in balancing the interests, `the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.' Under the second tier, however, regulations found to overtly discriminate in their restrictions on interstate commerce are held to be `virtually per se invalid.' Measures that discriminate against interstate commerce in this fashion are routinely struck down unless `the discrimination [they impose] is demonstrably justified by a valid factor unrelated to economic protectionism.' Notably, a finding of discriminatory economic protectionism may be made on the basis of either discriminatory purpose of the legislation or its discriminatory effect.
 "`Justification for [such] discriminatory restrictions on commerce [must] pass the "strictest scrutiny.'" The burden rests with the state to justify its statutes and such `burden of justification is so heavy that "facial discrimination by itself may be a fatal defect."' Due to the strict scrutiny, those defending the regulations must show that, even in cases where the regulations are justified by valid factors unrelated to economic protectionism, the discriminatory regulations advance `a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'"[21]
The Court applied this analysis to the then-existing residency requirements of K.S.A. 41-311(d), and concluded the requirements were discriminatory and thus must be strictly scrutinized.[22] Next, the Court considered the State's asserted justifications for the requirements ("to further temperance and to protect the general welfare, health and safety of the people of Kansas" and facilitation of background checks) and found them unconvincing and/or capable of being adequately served by reasonable nondiscriminatory alternatives.[23]
Finally, the Court rejected the State's argument that the residency requirements were saved by theTwenty-first Amendment.[24]
The State appealed the Court's decision in Glazer's but, before the appeal could be argued, the Kansas Legislature was convinced to amend K.S.A. 41-311(d) to remove the residency requirements for distributers and to pass what is now K.S.A. 2005 Supp. 41-311b, which provides for national criminal history records checks for all non-resident applicants for licensure under the Kansas Liquor Control Act.
Although we disagree with the District Court's assessment that the distributor's license residency requirement served only an economic protectionism purpose and not a core concern of theTwenty-first Amendment, passage of the 2001 amendments removing the residency requirement for distributors, thereby allowing theGlazer's decision to stand, together with enactment of a statute to address the background facilitation concerns raised inGlazer's, have significantly weakened the State's ability to argue the constitutionality of residency requirements for other license applicants under the Liquor Control Act. We therefore conclude that, notwithstanding the general rule that statutes are to be presumed constitutional, a court would find the residency requirement for corporate micro-brewery license applicants unconstitutional in violation of the dormant Commerce Clause.
Sincerely,
 Phill Kline Attorney General
 Julene L. Miller Deputy Attorney General
PK:JLM:jm
[1] Attorney General Opinion No. 95-57.
[2] 145 F.Supp.2d 1234 (2001).
[3] 544 U.S. 460, 125 S.Ct. 1885, 161 L.Ed.2d 796 (May 16, 2005).
[4] L. 2001, Ch. 55, §§ 1-4, now codified at K.S.A. 2005 Supp.41-311, 41-311b, 41-313 and 41-319.
[5] Id.
[6] L. 2001, Ch. 55, § 1, now codified at K.S.A. 2005 Supp.41-311.
[7] L. 2001, Ch. 55, § 2.
[8] L. 2001, Ch. 55, § 4.
[9] Art. I, § 8, cl. 3.
[10] See Attorney General Opinion No. 95-57.
[11] 544 U.S. 460, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005).
[12] Justice Kennedy delivered the opinion of the Court, joined by Justices Scalia, Souter, Ginsburg and Breyer. We hereinafter refer to this majority as "the Court."
[13] Heald, 125 S.Ct. at 1892.
[14] Id.
[15] Id. at 1895 (emphasis added, internal citations omitted).
[16] Id. at 1897-1903.
[17] Id. at 1905 (internal citations omitted).
[18] Id. at 1905-07 ("our precedents . . . require the `clearest showing' to justify discriminatory state regulation . . .").
[19] 145 F.Supp.2d 1234 (2001).
[20] These provisions and the Glazer's decision addressed only the residency requirements for distributors' licenses.
[21] Glazer's, 145 F.Supp.2d at 1240-41 (emphasis in original, internal citations omitted).
[22] Id. at 1241-42.
[23] Id. at 1242-44.
[24] Id. at 1244-47.