S06A0923. ATLANTA TAXICAB COMPANY OWNERS ASSOCIATION, INC. v. CITY OF ATLANTA.

(638 SE2d 307)

CARLEY, Justice.

The Atlanta Taxicab Company Owners Association, Inc. (Association) is a nonprofit corporation comprised of several companies. Its members are holders of a Certificates of Public Necessity and Convenience (CPNC) issued by the City of Atlanta (City). A CPNC is required for operation of a cab or limousine in the City. Holders of a CPNC must comply with Chapter 162 of the City Code, pursuant to the provisions of which the City regulates the taxicab industry. As a business investment, the CPNC is transferable "pursuant to a purchase, gift bequest or acquisition of the stock or asset of a corporation . . . ." Section 162-62 (a) of the City Code. Moreover, the interest "in a CPNC may be transferred involuntarily and disposed of by public or private sale in the same manner as personal property." Section 162-62 (a) (8) of the City Code. Notwithstanding these provisions regarding general transferability, the transferee is required to "submit an application for a CPNC and . . . meet all requirements for same." Section 162-62 (a) (3) of the City Code. One of those requirements is residency in Georgia "for at least one year immediately preceding the date of application . . . ." Section 162-57 (a) (3) of the City Code.

The Association brought suit against the City, seeking damages and a declaration that various sections of Chapter 162 were unconstitutional. After conducting a hearing, the trial court granted summary judgment in favor of the City. The Association brings this appeal from the trial court's order.

1. The City Council has established a Bureau of Taxicabs and Vehicles for Hire (Bureau), and authorized an administrative hearing procedure for the enforcement of those provisions of the City Code regulating taxicabs. The Association contends that the creation of

that hearing procedure is an ultra vires act, because the City Council lacks the authority to divest the municipal court of jurisdiction to hear such cases.

"The power granted to municipal corporations . . . shall not be construed to extend to . . . [a]ction affecting the jurisdiction of any court. . . ." OCGA § 36-35-6 (a) (6). Thus, the City cannot impede the exercise of the jurisdiction that has been granted to any court. Insofar as the jurisdiction of the City's municipal court is concerned, § 4-102 (1) of the City Charter provides that that court is authorized to hear cases involving all violations of ordinances, "except those relating to and regulating traffic. . . ." Ga. L. 1996, pp. 4469, 4515. Assuming, without deciding, that an exclusion from the municipal court's jurisdiction of such ordinance violations as relate to the regulation of "traffic" is not otherwise broad enough to encompass those violations related to the regulation of taxicabs, the fact still remains that the City Charter does not purport to grant that court exclusive jurisdiction over cases involving violations of ordinances relating to and regulating such vehicles for hire. The provisions of § 4-102 (1) of the City Charter are consistent with the concept of concurrent jurisdiction. While the municipal court is granted general jurisdiction over most cases involving ordinance violations, there is nothing to indicate that the City is not authorized to provide for an alternate means of adjudicating cases involving violations of provisions of the City Code, including the violation of those ordinances directed toward the regulation of taxicabs.

To the contrary, § 1-102 (36) of the City Charter expressly provides that the City has the power "[t]o regulate and license vehicles operated for hire in the city . . . ." Ga. L. 1996, pp. 4469, 4477. Under § 3-401 (a) and (i) of the City Charter, the City Council is also authorized to create boards and commissions and to specify their functions. Ga. L. 1996, pp. 4469, 4506-4507. Thus, in establishing the Bureau and by providing for administrative hearings to facilitate the enforcement of the regulation of taxicabs, the City Council did not act ultra vires and divest the municipal court of any jurisdiction granted exclusively to that court. The City Council exercised the regulatory authority over taxicabs granted to it by the City Charter. Therefore, the trial court correctly upheld the provisions of the City Code creating the Bureau and the administrative hearing procedure.

2. To qualify for a CPNC, the City requires that the holder be a resident of Georgia for at least one year. The Association contends that this residency requirement is unconstitutional because it violates the Commerce Clause.

Nothing about the [Association's] service affects interstate commerce. The service is incidental to a local operation

and we would not be justified in resorting to impractical theorizing in order to conclude that a local ride in a local taxi-cab affects interstate commerce.

*Airport Taxi Cab Advisory Committee v. City of Atlanta*, 584 FSupp. 961, 964 (1) (N.D. Ga. 1983) (upholding the City's residency requirement for taxi drivers as against an equal protection challenge). However, the City, through its ordinances, does not limit its regulation of the taxi business to those who actually provide the local services. It also exercises control over who can own and operate a local taxi business. Although a CPNC is needed for operation of a cab or limousine in the City, the ordinance provides that the holder of the CPNC is not required to be the actual operator of the vehicle. Thus, the CPNC is a certificate that the vehicle owner must obtain to authorize its use for hire in the City. Accordingly, the one-year residency requirement restricts to Georgia residents those who can apply for a CPNC and those to whom current CPNC holders can sell or lease their property interest in the certificate. Consequently, the residency requirement prohibits all non-Georgians from engaging in the taxi business in the City.

Whether the Association has standing to raise this issue was addressed below, and the trial court determined that the Association has "associational standing" in accordance with *Aldridge v. Ga. Hospitality & Travel Assn.*, 251 Ga. 234, 236 (1) (304 SE2d 708) (1983):

"(A)n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." [Cit.]

Here, every member of the Association is affected by the residency requirement, in that none of them is at liberty to sell or lease his or her CPNC to a non-resident of Georgia. The removal of this impediment to the sale or lease of a CPNC is clearly relevant to the Association's purpose. Since the ordinance has a common adverse impact on the Association's collective membership, participation of the individual members themselves is not required to determine the merits of the claim.

Standing does not require a showing that any particular individual member of the Association has already suffered an actual injury by being prevented from consummating the sale or lease of a

CPNC to a non-resident. "In order to challenge a statute or an administrative action taken pursuant to a statute, the plaintiff must normally show that it has interests or rights which *are or will be affected* by the statute or the action. [Cits.]" (Emphasis supplied.) *Preservation Alliance of Savannah v. Norfolk Southern Corp.*, 202 Ga. App. 116, 117 (413 SE2d 519) (1991).

> "Before a statute can be attacked by anyone on the ground of its unconstitutionality, he must show that its enforcement is an infringement upon his right of person or property, and that such infringement results from the unconstitutional feature of the statute upon which he bases his attack. [Cits.]"

*Crumley v. Head*, 225 Ga. 246, 247 (3) (167 SE2d 651) (1969). The ordinance at issue in this case, if enforced according to its terms, serves as an immediate infringement on the property rights enjoyed by all members of the Association, in that the provision erects an existing impediment to the solicitation, as well as the eventual consummation, of any sale or lease of a CPNC to a non-Georgian. Obviously, no out-of-state prospective buyer or lessee would ever seriously consider entering into a contract with a member of the Association knowing that the validity of the agreement is subject to challenge under the residency requirement. The Association, on behalf of its members, is entitled to contest the constitutionality of that residency provision in an effort to remove it as an existing impediment to the marketability of a CPNC to non-residents.

> [E]nforcement of the local enactment against [them] *will impact [their] right to engage freely in those business activities currently authorized by the [CPNC]* issued to [them] under the Act. Therefore, [the Association] has standing to assert that the ordinance is unconstitutional as applied to it[s members]. [Cits.] (Emphasis supplied.)

*City of Atlanta v. S.W.A.N. Consulting & Security Services*, 274 Ga. 277, 278 (1) (553 SE2d 594) (2001). The trial court correctly held that the Association has standing and, accordingly, the merits of the attack on the constitutionality of the provision under the Commerce Clause must be addressed. Compare *Adams v. Ga. Dept. of Corrections*, 274 Ga. 461, 463 (553 SE2d 798) (2001) (appellants mere self-proclaimed champions of the community who were "not directly affected" by the challenged statute).

As a "general principle[,] . . . the Commerce Clause prohibits a State from using its regulatory power to protect its own citizens from outside competition. [Cits.]" *Lewis v. BT Investment Managers*, 447

U. S. 27, 44 (III) (B) (100 SC 2009, 64 LE2d 702) (1980). That Commerce Clause prohibition applies to protection against outside competition in the provision of local services, as well as the movement of goods. See *Glazer's Wholesale Drug Co. v. Kansas*, 145 FSupp.2d 1234, 1241 (III) (A), fn. 9 (D. Kan. 2001) (residency requirement for liquor license unconstitutional). By limiting CPNC eligibility to residents of Georgia, the City's ordinance

> thus "overtly blocks the flow of interstate commerce at (the) State's borders." [Cit.] Such facial discrimination by itself may be a fatal defect, regardless of the [ordinance's] purpose, because "the evil of protectionism can reside in legislative means as well as legislative ends." [Cit.] At a minimum such facial discrimination invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives.

*Hughes v. Oklahoma*, 441 U. S. 322, 337 (II) (99 SC 1727, 60 LE2d 250) (1979).

> [E]ven in regulating to protect local interests, the States generally must act in a manner consistent with the "ultimate . . . principle that one state in its dealings with another may not place itself in a position of economic isolation." [Cit.] However important the state interest at hand, "it may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently." [Cit.]

*Lewis v. BT Investment Managers*, supra at 36 (II). " 'Discriminate' has been defined . . . in this context as 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.' [Cit.]" *Glazer's Wholesale Drug Co. v. Kansas*, supra at 1240 (III) A. "The burden is on the [City] to show that 'the *discrimination* is demonstrably justified by a valid factor unrelated to economic protectionism[.]' [Cit.]" (Emphasis in original.) *Chemical Waste Management v. Hunt*, 504 U. S. 334, 344 (II) (112 SC 2009, 119 LE2d 121) (1992).

Requiring that the actual operators of the taxis satisfy a residency requirement may be justified on the grounds that it enhances public safety and fosters more efficient service. See *Airport Taxi Cab Advisory Committee v. City of Atlanta*, supra at 967 (2). However, with regard to eligibility for holding a CPNC and, thus, engaging in the

taxi business, the City does not advance any legitimate local purpose served by the residency requirement. The City

> may regulate business which affects public health, safety and welfare, but it may not deprive an individual of his right to conduct lawful business unless it can be shown that such deprivation is reasonably related to the . . . interests sought to be protected. [Cit.] There is no relationship between the required residency and a valid governmental interest. It is economic protectionism which creates an artificial barrier to commerce and violates the Commerce Clause.

*Wometco Services v. Gaddy*, 616 SW2d 466, 468-469 (Ark. 1981). See also *Lewis v. BT Investment Managers*, supra; *Cooper v. McBeath*, 11 F3d 547 (5th Cir. 1994) (one-year residency requirement on holders of liquor license unconstitutional); *Glazer's Wholesale Drug Co. v. Kansas*, supra. Therefore, the trial court erred in failing to find that the one-year Georgia residency requirement violates the Commerce Clause of the United States Constitution.

3. The Association also urges that the one-year residency requirement violates equal protection. However, it is unnecessary to consider this additional constitutional challenge, since we have held that the requirement violates the Commerce Clause for the reasons discussed in Division 2.

4. The City Code provides that the Association's members are subject to the imposition of fines and penalties in the form of suspension or revocation of a CPNC when, in violation of the taxicab regulations, their drivers fail to obtain valid insurance and inspection stickers for the vehicles and fail to obtain or renew a driving permit. The Association urged that this is an imposition of vicarious criminal liability which constitutes a substantive due process violation. See *Davis v. City of Peachtree City*, 251 Ga. 219 (304 SE2d 701) (1983). However, the trial court held otherwise, concluding that when an ordinance "falls within the circle of the police power, it lies out of the orbit of the due-process clauses." *Davis v. Stark*, 198 Ga. 223, 230 (31 SE2d 592) (1944).

"[W]e have held that vicarious criminal liability violates due process. [Cit.]" *Perkins v. State*, 277 Ga. 323, 325 (2) (588 SE2d 719) (2003). However, subjecting persons to vicarious criminal liability is a distinct proposition from imposing civil sanctions against them for infractions committed by their agents.

> [C]ivil violations providing civil penalties such as fines or revocation of licenses [can] be used for offenses for which the

individual was not morally blameworthy and does not deserve the social condemnation "implicit in the concept 'crime.'"
[Cit.]

*Davis v. City of Peachtree City*, supra at 222 (1). Thus, the Association does not have a viable substantive due process claim unless its members are subjected to vicarious criminal liability, rather than vicarious civil sanctions, for their drivers' omissions.

As noted in Division 1, the relevant provisions of the City Code provide that charges brought against individuals and entities for violating the taxicab regulations are initially heard by a Bureau hearing officer who conducts an administrative hearing to determine whether any sanction is authorized. After conducting the hearing, the hearing officer makes a recommendation as to sanctions, and the City Code authorizes the Mayor, upon receiving the recommendation, to suspend and revoke a permit and a CPNC and to impose a civil fine for a violation of the regulations.

> [A] substantive due process analysis . . . considers both the interest of the public and the individual and whether, considering the legitimate public interests involved, there are other, less onerous means by which the public interest might be protected. [Cits.]

*Davis v. City of Peachtree City*, supra at 220 (1). Here, the ordinance in question is of the type which

> "dispenses with the conventional requirement for criminal conduct — awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger." [Cit.]

*United States v. Parks*, 421 U. S. 658, 668 (I) (95 SC 1903, 44 LE2d 489) (1975).

> [A] municipal ordinance is a valid exercise of the police power if it is substantially related to the public health, safety, or general welfare. [Cits.] . . . So long as an ordinance realistically serves a legitimate public purpose, and it employs means that are reasonably necessary to achieve that purpose, without unduly oppressing the individuals regulated, the ordinance must survive a due process challenge. [Cits.] . . . [W]here "legislative action is within the scope of the police power (as exists here), fairly debatable questions

as to its reasonableness, wisdom and propriety are not for the determination of the courts, but for that of the legislative body on which rests the duty and responsibility of (the) decision." [Cit.]

*City of Lilburn v. Sanchez*, 268 Ga. 520, 522 (2) (491 SE2d 353) (1997). When these principles are applied in this case, the City was authorized to find that, in the legitimate interest of promoting and protecting the public safety, subjecting the Association's members to civil sanctions for infractions committed by their drivers was a reasonably necessary and less onerous alternative than the imposition of vicarious criminal liability. Compare *Davis v. City of Peachtree City*, supra. Thus, the trial court did not err when it found that the Association's substantive due process challenge to the constitutionality of the ordinance was without merit.

5. In addition to a substantive due process attack on the constitutionality of the ordinance itself, the Association also asserted a separate claim against the City for an alleged procedural due process violation. According to the allegations of the original complaint filed in July of 2004, the City had engaged in a pattern of failing to provide the Association's members with sufficient notice when a citation was issued to a driver that would result in the imposition of vicarious liability. For this alleged procedural due process violation, the Association sought damages. However, the answer filed by the City alleged that the Association had not complied with OCGA § 36-33-5 by providing the City with notice of the procedural due process claim before filing suit. Thereafter, the Association amended its complaint so as to withdraw all claims for damages. On October 8, 2004, the Association served an ante-litem notice on the City. When, more than a month later, the City had not responded to the notice, the Association again amended its complaint on November 17, 2004 so as to allege compliance with OCGA § 36-33-5 and to reassert the procedural due process claim for damages.

In contrast to the substantive due process claim which the trial court found to be meritless, the trial court found that a procedural due process violation had occurred because "the City's actions pursuant to the challenged ordinances, prior to July 2004, [were] unconstitutional as applied." Nevertheless, it concluded that the claim must be dismissed for failure of the Association to provide the City with ante-litem notice before filing the original complaint. The Association urges that this is erroneous, because it was authorized to reassert the procedural due process claim by amendment after providing the notice.

> No person, firm, or corporation having a claim for money damages against any municipal corporation on account of injuries to person or property shall bring any action against the municipal corporation for such injuries, without first giving notice as provided in subsection (b) . . . . Within six months of the happening of the event upon which a claim against a municipal corporation is predicated, the person, firm, or corporation having the claim shall present the claim in writing to the governing authority of the municipality for adjustment . . . . No action shall be entertained by the courts against the municipal corporation until the cause of action therein has first been presented to the governing authority for adjustment. Upon the presentation of such claim, the governing authority shall consider and act upon the claim within 30 days from the presentation . . . .

OCGA § 36-33-5 (a), (b), (c). Satisfaction of this notice requirement is "a condition precedent to bringing suit against a municipal corporation for damages resulting from injuries to person or property . . . ." *City of Chamblee v. Maxwell*, 264 Ga. 635, 636 (452 SE2d 488) (1994). "[T]he purpose of the notice requirement is to apprise the city of the claim in order for it to determine whether or not to adjust the claim without suit. [Cits.]" *Jones v. City of Austell*, 166 Ga. App. 808, 809 (305 SE2d 653) (1983). Thus, the failure to give the City any ante-litem notice prior to July 2004 vitiated the Association's claim for damages alleged in its original complaint.

However, the Association did not pursue that original claim. After amending the complaint to withdraw it, the Association gave the City notice on October 8, 2004 and then reasserted the claim by another amendment the following month. The reasserted claim was not precisely the same as that alleged in the original complaint, as only those occurrences happening within six months of October 8, 2004 were viable. However, there is no impediment to asserting a new claim by amendment. *McDonald v. Rogers*, 229 Ga. 369, 378 (7) (191 SE2d 844) (1972), overruled on other grounds, *Gilman Paper Co. v. James*, 235 Ga. 348, 349 (219 SE2d 447) (1975); *Cooper v. Mason*, 151 Ga. App. 793, 794 (1) (261 SE2d 738) (1979). The Association filed the amendment before entry of a pre-trial order, so not even leave of the trial court was required. "Amendment is a resource against waste. [Cits.] The practice as to the allowance of amendments is very liberal. [Cits.]" *McRae v. Britton*, 144 Ga. App. 340, 345-346 (2) (240 SE2d 904) (1977). After giving notice in October of 2004, the Association could have filed a separate action against the City seeking damages. There is no reason why it could not also pursue the claim by filing an amendment to the complaint.

Because the giving of ante-litem notice is a condition precedent to bringing suit against a municipality, the notification itself cannot be accomplished by amendment after suit has been filed. Compare *Candler v. Orkin*, 129 Ga. App. 721, 723 (4) (200 SE2d 909) (1973) (holding that the ten-day notice required to recover attorney's fees under OCGA § 13-1-11 can be given in either the original complaint or by amendment). To the extent that *City of Atlanta v. Fuller*, 118 Ga. App. 563 (a) (164 SE2d 364) (1968) holds otherwise, it is hereby overruled. If the notice could be given by amendment, that would defeat the very purpose of OCGA § 36-33-5, which is to provide the municipality with an opportunity to investigate before litigation is commenced so as to determine whether suit can be avoided. " 'The act by its terms clearly prevents the filing of a suit against the municipality until after the expiration of thirty days from the filing of the claim in writing with the municipal authorities as required.' [Cit.]" *Jones v. City of Austell*, supra at 810.

However, the Association did not attempt to add the ante-litem notice by amendment to the complaint alleging a claim for damages against the City. Instead, it dismissed that claim by amendment to the original complaint, gave the City pre-litigation notice and then again amended its complaint to reallege the claim. This satisfied the procedural requirement of giving the City an opportunity to investigate the claim so as to determine whether to settle it without resort to litigation. The trial court erred in concluding that the Association was procedurally barred from pursuing that claim for such alleged violations of due process as occurred in the six months prior to October 8, 2004 when the ante-litem notice was given.

On appeal, the City urges that, even if it was permissible for the Association to withdraw and then to reassert the claim by amendment in November of 2004, the ante-litem notice that was served the preceding month was substantively deficient because, contrary to the mandate of OCGA § 36-33-5 (b), "the time, place, and extent of the injury" were not stated therein "as nearly as practicable . . . ." However, assuming, without deciding, that the alleged substantive deficiency of the notice was raised below as a ground for summary judgment, the trial court never ruled on it and, instead, based its grant of the City's motion solely on the procedural failure of the Association to comply with OCGA § 36-33-5 (b) prior to filing the original complaint. The Association has not briefed the question of the substantive sufficiency of the ante-litem notice that it gave the City, presumably because the trial court granted summary judgment only on the basis of the erroneous legal theory that the notice was procedurally deficient and also because the City did not file a cross-appeal expressly raising the alleged substantive insufficiency as a

viable alternative ground for the trial court's ruling. See *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002).

There is no precise standard for determining whether any given ante-litem notice is substantively sufficient, since substantial compliance with the statute is all that is required. *City of Arlington v. Smith*, 238 Ga. 50 (2) (230 SE2d 863) (1976). The information supplied will be deemed sufficient if it puts a municipality on notice of the "general character of the complaint, and, in a general way, of the time, place, and extent of the injury. The act recognizes, by the use of the words 'as near[ly] as practicable,' that absolute exactness need not be had." *Langley v. City Council of Augusta*, 118 Ga. 590, 600-601 (11) (45 SE 486) (1903). Since substantial compliance with OCGA § 36-33-5 (b) cannot be determined as a matter of law, but depends upon an examination of the underlying factual basis of the claim and an appraisal of the text of the notice so as to determine whether it is sufficient to inform the municipality of those facts "in a general way," consideration of the issue is best left in the first instance for the trial court. Because the trial court in this case did not examine the record to determine whether, considering the facts upon which the Association's claim rests, the ante-litem notice substantially complies with OCGA § 36-33-5 (b) "as nearly as practicable," it is not an appropriate issue to be addressed in the context of this appeal. "The tenet that the appellate courts do not rule on issues not ruled on by the trial courts preserves the appellate courts' jurisdiction and delineates the proper roles of the courts at the trial and appellate levels." *City of Gainesville v. Dodd*, supra at 838. However, the City is free to raise that issue and obtain an appealable ruling when the case is returned to the trial court.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Benham, Thompson and Hines, JJ., who concur in part and dissent in part.*

BENHAM, Justice, concurring in part and dissenting in part.

I agree with the majority that the Atlanta City Council's creation of the Taxicab Bureau was not an ultra vires act (Div. 1) and that the trial court was correct when it dismissed the Association's claim for damages because the ordinances which authorize the imposition of fines on the Association's members did not impose unconstitutional vicarious criminal liability (Div. 4). However, I believe the majority goes astray when it declares portions of the City's ordinances to be unconstitutional violations of the Commerce Clause of the United States Constitution (Div. 2) and does not address the Association's equal protection claim (Div. 3), and when it concludes the Association's ante litem notice was timely (Div. 5). Because I believe the Association did not sufficiently plead or prove any injury to support

its assertion that the ordinances' residency requirements were unconstitutional, I believe the trial court should have dismissed the request for a declaration of unconstitutionality under the Commerce Clause for lack of standing. Because I do not believe that an ante litem notice filed after the commencement of litigation is valid, I would affirm the trial court's dismissal of the Association's claim for damages. Accordingly, I dissent to Divisions 2, 3, and 5 of the majority opinion.

1. The majority takes the unprecedented step of declaring a city ordinance to be an unconstitutional violation of the Commerce Clause of the United States Constitution without any allegation or proof of injury. When the Association raised its concern about the constitutionality of the residency requirement in its first amended complaint, it did so by merely paraphrasing the two applicable ordinance sections and asserting they violated the Commerce Clause. There was no recitation of facts setting out how the ordinances were defective or how they harmed the Association or its members. However, a residency requirement is not a per se violation of the Commerce Clause, so merely identifying the disputed ordinances is insufficient to establish an injury. See, e.g., *White v. Mass. Council of Constr. Employers*, 460 U. S. 204 (103 SC 1042, 75 LE2d 1) (1983) (executive order upheld under a Commerce Clause challenge, which required half of all workers employed on city-funded construction projects to be residents of the city); *Vlandis v. Kline*, 412 U. S. 441 (93 SC 2230, 37 LE2d 63) (1973) (residency requirements for in-state tuition rates are constitutional if they provide an opportunity for someone from out of state to demonstrate that they have become a bona fide state resident). In its fourth amended complaint, the Association only added a request "[t]hat this Court declare that the residency requirement for ownership of CPNCs is unconstitutional . . . ," again without any assertion of facts underlying the request.

The majority opinion improperly addresses the merits of the Association's Commerce Clause claim in the face of the requirement that an association "must *allege* that its members, or any one of them, are suffering immediate and threatened injury as a result of challenged action of the sort that would make out a justiciable case had the members themselves brought suit. . . . [Cit.]" *Hunt v. Washington State Apple Advertising Comm.*, 432 U. S. 333, 342 (97 SC 2434, 53 LE2d 383) (1977) (expounding on the first prong of the three-prong "associational standing" test it set forth in *Hunt* and which this Court adopted in *Aldridge v. Ga. Hospitality &c. Assn.*, 251 Ga. 234, 235 (1) (304 SE2d 708) (1983)).[1]

---

[1] In addition to the adoption of the *Hunt* "associational standing" test in *Aldridge*, this

The key requirement for standing to bring a constitutional challenge in Georgia is that the plaintiff *show* either that he or she was injured in some way by the operation of the statute, ordinance, or administrative action, or that the statute has an adverse impact on that party's rights. See *Tennille v. State,* 279 Ga. 884, 885 (622 SE2d 346) (2005); *Agan v. State,* 272 Ga. 540, 542 (1) (533 SE2d 60) (2000); *State of Ga. v. Jackson,* 269 Ga. 308, 310 (496 SE2d 912) (1998); *Ambles v. State,* 259 Ga. 406 (1) (383 SE2d 555) (1989). This "injury-in-fact" requirement was clarified in *Lujan v. Defenders of Wildlife,* 504 U. S. 555, 560 (112 SC 2130, 119 LE2d 351) (1992), when the Supreme Court determined that, at "an irreducible constitutional minimum," a plaintiff who invokes the court's jurisdiction *must allege* he "suffered an 'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized, [cits.] and (b) 'actual or imminent, not "conjectural" or "hypothetical". . . .' " (emphasis supplied). See also *Gladstone Realtors v. Village of Bellwood,* 441 U. S. 91, 99 (99 SC 1601, 60 LE2d 66) (1979) (plaintiff must "*show* that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant") (emphasis supplied).

In *Lujan,* the Court clearly set out the level of specificity that must be "shown" before a plaintiff may properly be afforded standing. Thus, proper standing requires, at a minimum, that a plaintiff clearly allege an injury somewhere in his pleadings. If these factual allegations of injury are not present in the complaint, supporting affidavits, or other evidence, then the trial or reviewing court must dismiss the complaint. *Warth v. Seldin,* 422 U. S. 490, 502 (95 SC 2197, 45 LE2d 343) (1975). See *Sierra Club v. Morton,* 405 U. S. 727, 735 (92 SC 1361, 31 LE2d 636) (1972) (upholding dismissal of complaint because plaintiff "*failed to allege* that it or its members would be affected in any of their activities or pastimes by the . . . development [of Mineral King Mountain]. *Nowhere in the pleadings or affidavits* did the club state that its members use Mineral King for any purpose, much less that they use it in any way that would be significantly affected by the proposed actions of the respondents." (emphasis supplied). See also

Court has frequently turned to the U. S. Supreme Court's case law concerning "Article III" standing to resolve issues of standing to bring a claim in Georgia's courts. See, e.g., *Lambeth v. State,* 257 Ga. 15, 16 (354 SE2d 144) (1987), quoting *County Court of Ulster v. Allen,* 442 U. S. 140, 154-155 (99 SC 2213, 60 LE2d 777) (1979) ("a party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on [the party's] own rights"); and *South Ga. Nat. Gas Co. v. Ga. Public Svc. Comm.,* 214 Ga. 174 (104 SE2d 97) (1958), quoting *Mallinckrodt Chemical Works v. Missouri,* 238 U. S. 41, 54 (35 SC 671, 59 LE 1192) (1915) (to properly challenge the constitutionality of an ordinance or state law, a plaintiff must show he is "within the class with respect to whom the act is unconstitutional, and that the alleged unconstitutional feature injures him . . ." or otherwise deprives him of a protected right).

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U. S. 669 (93 SC 2405, 37 LE2d 254) (1973) (Court ruled plaintiffs had standing because their complaint alleged they had personally suffered aesthetic and environmental injuries from the Interstate Commerce Commission's decision to increase freight rates).

In contrast, the Association in the case at bar never satisfied the minimum constitutional standing requirements because the Association did not allege a single fact or "concrete or particularized" injury that would establish standing to bring a Commerce Clause challenge. The Association failed to allege, for example, that any of its members had an out-of-state buyer to whom they were prevented from selling a CPNC; that the Association represented an out-of-state party who was denied the right to purchase a CPNC by virtue of their residence; or even that the market for CPNC buyers has been limited in any way because of the requirement. Even during the hearing on the motion for partial summary judgment, the Association rested its entire challenge on equal protection grounds and did not argue the Commerce Clause issue, again forgoing an opportunity to establish how its members were injured. In short, the Association has failed to "show" how the CPNC residency requirement injured it or its members by having an "adverse impact on [the party's] own rights." *South Ga. Nat. Gas Co.*, supra.

Division 2 of the majority opinion overlooks this deficiency and declares the ordinance to be an unconstitutional violation of the Commerce Clause without any identifiable claim in the record of either an "actual or imminent" injury. *Lujan*, supra at 560. Rather than adhere to the requirement that an injury-in-fact be established in the pleadings, affidavits and other evidence produced by the plaintiff, the majority opinion supplies the injuries the majority believes the members of the Association might suffer as a result of the residency requirement. In an effort to reach the merits of the Association's suggestion that the City's ordinance violates the Commerce Clause, the majority resorts to granting the Association standing based on this Court's post-hoc recitation of injuries the majority perceives might result from the hypothetical future enforcement of a statute.

The majority opinion, quoting *Preservation Alliance of Savannah v. Norfolk Southern Corp.*, 202 Ga. App. 116, 117 (413 SE2d 519) (1991), states that a plaintiff normally must show "it has interests or rights which are or *will be affected* by the [ordinance]."[2] A future

---

[2] Neither of the cases cited by the Court of Appeals in support of this proposition suggests a statement of future injury is sufficient. In each case, both of which involve injunctive relief, this Court stated that in order to maintain an action challenging a statute, the plaintiff must

injury may suffice if it is "imminent," as opposed to "conjectural or hypothetical," and the Supreme Court has generally only allowed standing on this basis if a plaintiff seeks declaratory or injunctive relief and alleges a "substantial likelihood of future harm." See *County of Riverside v. McLaughlin*, 500 U. S. 44, 51 (111 SC 1661, 114 LE2d 49) (1991) (standing granted to seek declaratory judgment because plaintiffs alleged they were suffering a current injury and "would continue to suffer that injury until they received the probable cause determination to which they were entitled."). See also *City of Los Angeles v. Lyons*, 461 U. S. 95 (103 SC 1660, 75 LE2d 675) (1983) (no standing to enjoin the police from using a chokehold because plaintiff did not show a "sufficient likelihood" that he would be subjected to a chokehold in the future).

However, even the most generous interpretation of the Association's pleadings in this case does not suggest that the Association alleged facts that give rise to a claim for declaratory or injunctive relief. The Association has never alleged "an actual controversy or circumstances showing a necessity for a determination to guide and protect [its members] from uncertainty and insecurity with regard to the propriety of some future act or conduct. . . ." *Baker v. City of Marietta*, 271 Ga. 210, 215 (518 SE2d 879) (1999). The Association has alleged nothing but the existence of the ordinance at issue and made a request that it be found to be an unconstitutional violation of the Commerce Clause. In the absence of pleadings or proof showing injury or uncertainty or insecurity, the majority opinion is, in essence, issuing an "erroneous advisory opinion which rules in [the Association's] favor as to future litigation over the subject matter. . . ." Id. See also *Fourth Street Baptist Church of Columbus v. Bd. of Registrars*, 253 Ga. 368 (1) (320 SE2d 543) (1984) (a court "has no province to determine whether or not a statute, in the abstract, is valid or to give advisory opinions.").

Allowing the Association, based on the record as it has been developed to this point, standing to challenge the constitutionality of the ordinance without requiring the Association to have shown in its pleadings, affidavits or evidence, some kind of injury means that "anyone who objects to the enforcement of any particular statute [has] standing to file a constitutional challenge even though he or she is not directly affected by that statute. Such a holding [renders] the concept of 'standing' meaningless." *Adams v. Ga. Dept. of Corrections*, 274 Ga. 461 (553 SE2d 798) (2001). Without a showing of an actual or

show that the interests or rights of the complainant *are affected* by the statute. *Davis v. Jackson*, 239 Ga. 262, 264 (236 SE2d 613) (1977); *West v. Housing Auth. of Atlanta*, 211 Ga. 133, 136 (84 SE2d 30) (1954).

imminent injury through specific pleadings, affidavits or other evidence, a plaintiff may not challenge a statute's constitutionality under the Commerce Clause, no matter how egregious a violation the majority opinion may hypothesize, and I cannot join what I believe is an advisory opinion concerning the constitutionality of an ordinance of the City of Atlanta. That portion of the trial court's judgment addressing the Commerce Clause issue should be vacated and the case remanded to the trial court with direction that the portions of the amended complaints asserting a Commerce Clause violation be dismissed.

2. Because I disagree with the majority's approach to the Commerce Clause issue, I must also disagree with its handling in Division 3 of the Association's equal protection challenge to the ordinance's requirement that an applicant for a CPNC be a Georgia resident for at least one year. I believe the merits of the challenge should be addressed under the rational basis test since the Association's members do not comprise a suspect class and holding a CPNC issued by the City is not a fundamental right, and the trial court's decision upheld.

> [T]he legislative classification created by the ordinances can withstand constitutional assault when the classification is based on rational distinctions and bears a direct and real relation to the legitimate object or purpose of the legislation. . . . A classification will be upheld in the face of an equal protection challenge so long as under any conceivable set of facts, it bears a rational relationship to a legitimate end of government not prohibited by the Constitution.

(Punctuation omitted.) *Old South Duck Tours v. Mayor &c. of Savannah*, 272 Ga. 869, 873 (3) (535 SE2d 751) (2000).

The trial court concluded a rational basis existed for the one-year residency requirement after finding it "fosters better familiarity with the City of Atlanta and encourages commercial ties to the community." While it may be true, as the Association suggests on appeal, that there are means other than a state-wide residency requirement that would better serve the goals of achieving familiarity with Atlanta and encouraging commercial ties to the Atlanta community, our task is not to pass on the wisdom of the legislative classification but only to determine whether it is reasonable. See *State of Ga. v. Heretic*, 277 Ga. 275 (1) (588 SE2d 224) (2003). In light of the expansive area beyond the municipal boundaries of the City of Atlanta that the Association's members serve, a state residency requirement is not unreasonable. Accordingly, the trial court did not err in finding the requirement did not violate equal protection.

3. With regard to the majority opinion's discussion of vicarious criminal liability,[3] I agree that the ordinance does not impose the vicarious criminal liability condemned by this Court in *Davis v. City of Peachtree City*, 251 Ga. 219 (304 SE2d 701) (1983); rather, the ordinance is the embodiment of that which this Court endorsed in *Davis*: "civil violations providing civil penalties such as fines or revocation of licenses [to] be used for offenses for which the individual was not morally blameworthy and does not deserve the social condemnation 'implicit in the concept "crime." ' " Id. at 222.

The distinction between the stigma of a criminal conviction and the imposition of civil punishment drawn in *Davis v. City of Peachtree City* and endorsed by this Court today is appropriate. The Supreme Court of Minnesota, relying heavily on *Davis v. City of Peachtree City*, also has concluded that "criminal penalties based on vicarious liability . . . are a violation of substantive due process and that only civil penalties would be constitutional." *State v. Guminga*, 395 NW2d 344 (Mn. 1986). Other courts have used imprisonment as the factor which distinguishes between constitutional and unconstitutional vicarious criminal liability, thereby making the imposition of fines pursuant to a criminal conviction constitutional vicarious criminal liability. See, e.g., *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F3d 1358, 1368 (11th Cir. 1999), cert. denied, 529 U. S. 1053 (120 SC 1554, 146 LE2d 459) (2000) (due process prohibits government from imprisoning a person without some proof of some form of personal blameworthiness, so owner of adult entertainment establishment could be held liable for acts of servants, employees, and agents acting within their scope of authority only if the penalty did not involve imprisonment); *State v. Hy Vee Food Stores*, 533 NW2d 147, 151 (S.D. 1995) (imposition of a $200 fine on corporation after employees sold alcohol to underage minors did not violate corporation's due process rights); *Commonwealth v. Koczwara*, 397 Pa. 575 (155 A2d 825) (1959), cert. denied, 363 U. S. 848 (80 SC 1624, 4 LE2d 1731) (1960) (imprisonment of individual owner for employee's action of selling alcohol to underage minor violated due process, but imposition of a fine did not). By focusing on the stigma of a criminal *conviction* rather than the stigma of imprisonment pursuant to a criminal conviction, Georgia is more protective of the third party.

---

[3] Vicarious liability is not strict liability:
> With strict liability, there must be a showing that the defendant personally engaged in the necessary acts or omissions; only the requirement of mental fault is dispensed with altogether. By contrast, with vicarious liability it is the need for a personal *actus reus* that is dispensed with, and there remains the need for whatever mental fault the law requires on the part of the employee [or agent or servant].

LaFave & Scott, Substantive Criminal Law, Vol. 2, § 13.4. See also *Davis v. City of Peachtree City*, 251 Ga. 219, 220, n. 1 (304 SE2d 701) (1983).

4. As stated earlier, I find myself in disagreement with the majority with regard to the efficacy of the ante litem notice filed in this case. In its order granting summary judgment to the City, the trial court dismissed the Association's claims for damages, citing the Association's failure to comply with the ante litem notice requirements of OCGA § 36-33-5 prior to filing the lawsuit against the City. OCGA § 36-33-5 (a) provides: "No person, firm, or corporation having a claim for money damages against any municipal corporation on account of injuries to person or property shall bring any action against the municipal corporation for such injuries, without first giving notice as provided in subsection (b) of this Code section." Subsection (b) requires presentation of the claim in writing to the municipality's governing authority "for adjustment" within six months of the happening of the event upon which the claim is predicated, and states "[n]o action shall be entertained by the courts against the municipal corporation until the cause of action therein has first been presented to the governing authority for adjustment." Subsection (c) gives the municipality's governing authority 30 days to consider and act upon the claim.

On appeal, the Association acknowledges it did not serve the City with ante litem notice prior to filing suit, but contends the ante litem notice it served three months after initiating litigation complied with the statute because, upon being made aware of its ante litem deficiency, the Association had dismissed its claims for damages, served the City with ante litem notice, waited the requisite 30 days, and then amended its complaint to seek damages. The majority reverses the trial court's ruling on the ground that the Association did not pursue the claim for damages it initially had filed, but pursued the claim for damages it filed after it had dismissed the first claim and served the City with ante litem notice in mid-litigation. I cannot endorse the Association's sleight of hand.

"Since the right to sue a municipality is statutory, the legislature may attach a notice-of-claim requirement as a precondition to maintenance of such a suit." *Shoemaker v. Aldmor Mgmt.*, 249 Ga. 430, 432 (291 SE2d 549) (1982). Giving ante litem notice is a condition precedent to filing suit against a municipality. *Jones v. City of Austell*, 166 Ga. App. 808, 809 (305 SE2d 653) (1983). Where the original complaint made no allegation that the claim had been presented to the governing authority of the municipality, the complaint set out no cause of action. *Saunders v. City of Fitzgerald*, 113 Ga. 619, 620 (38 SE 978) (1901); *Hooper v. City of Atlanta*, 26 Ga. App. 221, hn. 3 (105 SE 723) (1921).

The purpose and intent of the General Assembly in requiring ante litem notice prior to filing suit is fourfold:

■ to afford the officials of an offending city opportunity to investigate the complaint at a time when the evidence is more readily available, [2] to afford them opportunity . . . to take proper steps to abate [a nuisance] before the effects thereof become great or far reaching, [3] to bar a claimant's right of recovery for any and all claims arising by reason of matters that may have transpired or existed . . . more than six months prior to the giving of the required ante litem notice, and [4] to afford the city an opportunity to negotiate a settlement of such claims as it may determine to be meritorious before litigation is commenced, thus protecting the interests of the general public by reducing the exposure of the funds in the city treasury. . . .

*City of Gainesville v. Moss*, 108 Ga. App. 713 (1) (134 SE2d 547) (1963), overruled on other grounds, *City of Chamblee v. Maxwell*, 264 Ga. 635 (452 SE2d 488) (1994). Allowing a party to give the required ante litem notice after suit has been filed and while there is pending between the same parties litigation concerning the same subject matter defeats several of the purposes behind requiring ante litem notice. The looming shadow cast by the active litigation between the municipality and the plaintiff deprives the municipal governing authority of a meaningful opportunity to investigate and severely hampers the municipal governing authority's ability to negotiate a settlement of the claim for money damages. This is especially true when, as here, the basis for the claim for money damages is the procedure followed in the operation of certain ordinances and the ante litem notice was filed when there was pending between the parties a lawsuit seeking declaratory and injunctive relief from the same ordinances. The Association's filing of ante litem notice in mid-litigation effectively deprived the City of the opportunity to address the procedures for which the Association sought monetary damages since any action taken by the City in response to that ante litem notice likely would impact adversely the related pending litigation in which the Association and the City were locked.

In overruling the holding in *City of Atlanta v. Fuller*, 118 Ga. App. 563 (a) (164 SE2d 364) (1968), the majority acknowledges that ante litem notice cannot be accomplished by amendment after suit is filed because "that would defeat the very purpose of OCGA § 36-33-5, which is to provide the municipality with an opportunity to investigate before litigation is commenced so as to determine whether suit can be avoided." Maj. op. at 351. As shown above, the same rationale applies when a party files an ante litem notice in an effort to seek money damages in a pending lawsuit. In order to give effect to the important purposes behind the requirement that ante litem notice be

given before a lawsuit is filed, the claim for money damages in the present case must be dismissed since the lawsuit of which it is a part was filed before the ante litem notice was given and remained pending while the ante litem notice procedure was initiated. The trial court was correct when it determined the Association had not given timely ante litem notice and dismissed the Association's claim for monetary damages as a result thereof. Because I believe the majority errs when it reinstates the claim for monetary damages on the ground that the ante litem statute authorizes a party engaged in litigation with a municipality to file an ante litem notice, wait the requisite 30 days, and amend its complaint to seek monetary damages, I respectfully dissent.

I am authorized to state that Justice Thompson joins this dissent in its entirety and Justice Hines joins Division 4 of this dissent.

HINES, Justice, concurring in part and dissenting in part.

I agree with all that is said in the majority opinion except Division 5, which deals with the giving of ante litem notice. I agree with Justice Benham's position on the lack of validity of the attempt at ante litem notice. By definition, such notice is not to be given in the midst of the litigation.

DECIDED NOVEMBER 30, 2006.

*George B. Spears*, for appellant.
*R. Roger Bhandari, Laura J. Broward*, for appellee.