NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: June 24, 2025

S25G0995.  FLEUREME v. CITY OF ATLANTA, et al.

PINSON, Justice.

Before bringing a tort claim against a city for damages, a person has to give the city notice of the claim. The statute requiring that notice, OCGA § 36-33-5, says that it must be served on "the mayor or the chairperson of the city council or city commission . . . by delivering the claim to such official personally or by certified mail or statutory overnight delivery." Id. § 36-33-5 (f). This case requires us to decide whether that service requirement may be satisfied by a notice that was mailed by statutory overnight delivery, addressed to the "Office of the Mayor" at the correct address for that office. For the reasons set out below, we hold that such a notice may satisfy the service requirement. So the judgment of the Court of Appeals, which rested on the contrary view, is reversed.

1. Roodson Fleureme alleges in this case that he was injured when he was struck by a City of Atlanta vehicle driven by an employee of the City. Before bringing a lawsuit, Fleureme sent several timely ante litem notices by Federal Express. One of those notices was mailed in an envelope addressed to "City of Atlanta Office of the Mayor" at the correct address of Atlanta City Hall. Inside the envelope was the notice itself: a letter addressed to "City of Atlanta, Office of the Mayor," beginning with the salutation "To Whom it May Concern."

A few months later, Fleureme sued the City for negligence. The City moved to dismiss, arguing, among other things, that Fleureme's ante litem notice to the mayor did not comply with OCGA § 36-33-5 (f). The trial court granted the motion to dismiss.[1] The court agreed with the City that OCGA § 36-33-5 (f) requires that an ante litem notice to a city mayor be served on the mayor individually and by

---

[1] Fleureme's complaint also named as a defendant the driver who allegedly struck Fleureme. The driver moved to dismiss on the ground that he was entitled to official immunity. Fleureme agreed with that argument, and the trial court dismissed the claims against the driver without discussion. That dismissal order is not part of this appeal.

name, and that Fleureme's notice addressed to the "Office of the Mayor" did not do that.

The Court of Appeals affirmed the trial court under the same reasoning. See *Fleureme v. City of Atlanta*, 371 Ga. App. 416 (900 SE2d 625) (2024). The Court of Appeals started from the premise that a plaintiff "must strictly comply" with the service requirement of OCGA § 36-33-5 (f), in part because the statute uses the word "shall," which the court said was a "mandatory command." See id. at 417. The court concluded that Fleureme's service on the "Office of the Mayor" fell short. "Strict compliance" with the service requirement, the court reasoned, meant that "the mayor — not the mayor's office" had to be "served with the mailing." Id. at 423 (2) (b). In the court's view, that meant that the notice and the envelope containing it "must actually be addressed to" the person being served. Id. at 419 (1). See also id. at 424 (2) (b). Fleureme's notices were not, so the Court of Appeals affirmed the order dismissing Fleureme's complaint.

We granted review to determine whether the statutory requirement to serve an ante litem notice on "the mayor" may be satisfied by mailing to the correct mailing address a notice that is addressed to the "Office of the Mayor."

2. (a) This is a question of statutory construction, so we should start with some basic principles. We interpret legal text according to its original public meaning: the meaning that the public would have understood that language to carry at the time it was enacted. See *Seals v. State*, 311 Ga. 739, 740 (1) (860 SE2d 419) (2021) (citing *Olevik v. State*, 302 Ga. 228, 235 (2) (c) (i) (806 SE2d 505) (2017)). To figure out the meaning of language in a statute, we read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would." *State v. Islam*, 321 Ga. 30, 32 (912 SE2d 632) (2025) (citation omitted). In doing so, we always consider context, which is the "primary determinant of a text's meaning." *City of Guyton v. Barrow*, 305 Ga. 799, 805 (3) (828 SE2d 366) (2019). Relevant context may include the language around the text we are interpreting, other provisions of the same statute, that statute's broader

4

structure and history, and any other law that made up the legal background of the statutory provision in question when it was enacted. See id.

The legal text at issue here is the service requirement of Georgia's municipal ante litem notice statute, OCGA § 36-33-5, which says that "[a] claim submitted under this Code section shall be served upon the mayor or the chairperson of the city council or city commission, as the case may be, by delivering the claim to such official personally or by certified mail or statutory overnight delivery." Id. § 36-33-5 (f). And the question is whether this requirement may be satisfied by mailing a notice to the address of the mayor's office, addressed to the "Office of the Mayor," rather than to the mayor by name. As always, we start with the relevant language, but that language on its own does not get us very far towards an answer to this question. The question turns on what it means to serve "the mayor" by "delivering" the claim to "such official," a requirement that could plausibly be read in isolation to require either putting the notice of the claim directly into the hands of the person who serves as the

5

mayor (the City's position), or just to get the notice to the mayor's address. So we must turn to the relevant context of this language to figure out its meaning. We will not bury the lede: the context relevant to this service requirement make clear enough that a notice addressed to the "Office of the Mayor" at the correct mailing address may satisfy the statute's service requirement.

Start with the municipal ante litem notice statute as a whole. The text of this statute shows that it seeks to ensure that the "governing authority" of a municipality knows about a potential tort claim and has a chance to settle it before a lawsuit is filed. Cf. *Cummings v. Georgia Dept. of Juvenile Justice*, 282 Ga. 822, 824 (653 SE2d 729) (2007) (addressing the Georgia Tort Claims Act's ante litem notice requirement and explaining that its "purpose . . . is to ensure that the state receives adequate notice of the claim to facilitate settlement before the filing of a lawsuit") (cleaned up). Subsection (b) of the statute requires that any person with a potential claim must "present the claim in writing to the *governing authority* of the municipal corporation" within six months of the event giving rise to

the claim, and it precludes courts from even "entertain[ing]" an action about that claim until it "has first been presented to the *governing authority* for adjustment." OCGA § 36-33-5 (b) (emphasis added). Subsection (c) then imposes a corresponding duty on the "governing authority" to "consider and act upon the claim within 30 days." Id. § 36-33-5 (c).

Subsection (f), the service requirement, must be read in light of this focus on giving the "governing authority" notice of a claim and a chance to resolve it. Read in that way, the service requirement can only reasonably be understood as a requirement that specifies how to get notice *to the governing authority*. And given that understanding, mailing a notice to the office where "the mayor" (or "the chairperson of the city council or city commission," for that matter) works, addressed to the formal title of the official's office, is a reasonable way to "deliver[ ]" the claim to the relevant official. After all, these officials represent and act on behalf of a municipality's "governing authorities" only through the offices they hold, not as individuals. And when the statute directs service to the mayor or the city council

7

chair, it refers to them as "such official[s]," not as "such individuals" or "such persons." That makes sense: any plaintiff filing a lawsuit generally has to serve and notify the defendant, see OCGA § 9-11-4, so if the defendant is a city, it stands to reason that the service requirement is met if the delivery of the notice is calculated to get to an official standing in the shoes of that city.[2] And although a notice addressed to that official by name would do the trick, so would a notice addressed to the formal office of that official and delivered to the office where that official works.

This broader understanding of what steps may satisfy the service requirement is consistent with the history of the municipal ante litem notice statute. Before that requirement was added to OCGA § 36-33-5 in 2014, see Ga. L. 2014, pp. 125-126, Act 487, § 1, the statute did not specify any particular people or entities to be served, which led to repeated litigation about whether getting the notice to

---

[2] Along the same lines, it was well understood when subsection (f) was enacted in 2014 that a suit against a government "official" in his official capacity is really a suit against the entity — or "governing authority" — that the official serves. See, e.g., *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001).

particular officials or offices was sufficient to "present the claim in writing to the governing authority," OCGA § 36-33-5. See *City of Albany v. GA HY Imports, LLC*, 348 Ga. App. 885, 889 (1) (825 SE2d 385) (2019). Adding subsection (f) resolved that ambiguity by specifying which "officials" — "the mayor or the chairperson of the city council or city commission, as the case may be" — to serve. But when that provision was added, the overarching requirement to "present the claim in writing to the governing authority" remained, thus making clear that the service requirement is a clarification of how to apprise the governing authority of the claim, not a new requirement to address the notice to the particular officials by name.

The City tries to support its narrow reading of the statute — under which the service required can be satisfied *only* by getting the notice into the hands of the mayor himself — by emphasizing the word "personally." See OCGA § 36-33-5 (f) (service requirement is met "by delivering the claim to such official personally or by certified mail or statutory overnight delivery"). The City contends the phrase "to such official personally" establishes that the notice must be

9

handed to the individual person who holds the office.

But when we interpret statutes, we apply ordinary principles of grammar, see *Walton Elec. Membership Corp. v. Georgia Power Co.*, 320 Ga. 740, 747 (2) (911 SE2d 559) (2025), and that reading does not follow those principles. To see why, consider the word "or" that comes after the "personally." Under the City's reading, that "or" creates a disconnect between the first and second clauses of the statute. The first clause — "by delivering the claim to such official personally" — presents the complete thought that service must be made on an individual person. But then the next clause — "or by certified mail or statutory overnight delivery" — begins with the word "or," and goes on to describe two methods of service. That doesn't work: what comes after the "or" does not follow from what comes before it. Not only that, but under this reading, the statute would not require service on "such official" at all if the plaintiff chooses one of the other two methods of service. Instead, it would allow the plaintiff to satisfy the service requirement either by (1) delivering the claim "to such

official personally" or (2) mailing the claim to some unspecified person or office, which would defeat the statutory purpose of making sure that the "governing authority" is aware of the pending claim.

By contrast, reading the word "personally" as simply indicating a third permissible method of service gives grammatical meaning to the entire subsection. Under that reading, the first clause requires that the claim be delivered "to such official," and the second requires that the delivery be made either "personally" (meaning in-person delivery), by certified mail, or by statutory overnight delivery. To put it visually, the sentence breaks like this: ". . . by delivering the claim to such official // personally or by certified mail or statutory overnight delivery," and not, as the city argues, like this: " . . . by delivering the claim to such official personally // or by certified mail or statutory overnight delivery." The former reading gives meaning to all the words in the statute, and results in no orphaned conjunctions, dangling clauses, or awkward changes in tense. In other words, it takes the statutory text "in its most natural and reasonable way, as an ordinary speaker of the English language would." See *Islam*, 321

11

Ga. at 32. And it is consistent with the understanding that it is the "governing authority" that must be presented with the notice. After all, a plaintiff can personally deliver a notice to the office of the mayor, just as he can send the notice by certified mail or statutory overnight delivery addressed to the office of the mayor. He can serve the mayor in those ways too, of course, but the word "personally" doesn't mean that he must.[3]

It would make little sense to require plaintiffs to get the ante litem notice into the hands of the mayor himself given that the statute requires plaintiffs to serve the notice by "delivering" it to the relevant official. In this context, to "deliver" something means to give or transfer possession of it. See *Georgia Ports Auth. v. Harris*, 274 Ga. 146, 149-150 (2) (549 SE2d 95) (2001) (ante litem notice was

---

[3] This reading of the word "personally" finds further support from its use in another statute: the Georgia Tort Claims Act, which addresses tort claims against the State, provides that the required ante litem notice "shall be mailed by certified mail or statutory overnight delivery, return receipt requested, or delivered personally" — an unambiguous reference to personal service as one of three permissible methods of service. See OCGA § 50-21-26 (a) (2); *Pandora Franchising, LLC v. Kingdom Retail Grp., LLLP*, 299 Ga. 723, 727 (1) (a) (791 SE2d 786) (2016) (noting that we can look to other statutes to determine the meaning of a statute).

delivered when it was stamped as received by the department to which it was addressed); *"Delivery,"* American Heritage Dictionary (4th ed. 2000) ("The act of transferring to another."). And it is the plaintiff's burden to show that this delivery happened, such that the service requirement is met. See *Stambaugh v. City of Demorest*, 221 Ga. 527, 528 (2) (145 SE2d 539) (1965) (plaintiff's petition for damages against municipality was subject to special demurrer because plaintiff "failed to show that the plaintiff, prior to the institution of this litigation, presented her claim for damages to the city as required by" the ante litem notice statute). If the statute required getting the notice into the hands of the mayor himself, it is hard to see how a plaintiff could *ever* make sure that this delivery requirement was met. Even if the notice were addressed to the mayor by name — which the City says is required — how could the plaintiff verify and prove that it was received by the mayor himself, rather than his staff? On the other hand, it would be straightforward to show compliance with a requirement that is met by delivery to the office of the mayor: the plaintiff could simply walk into city hall and deliver the

notice to the front desk of the mayor's office, or he could mail it to the office of the mayor at the correct address by any of the permitted statutory methods. Cf. *Norris v. Georgia Dept. of Transp.*, 268 Ga. 192, 193 (486 SE2d 826) (1997) (plaintiff can show compliance with ante litem notice requirement of Georgia Tort Claims Act by showing he mailed the notice by a statutorily permitted method; he need not show it was actually received). The general illogic of the City's artificially narrow view of the service requirement is further reason to reject it.

The construction of the service requirement we arrive at in this case is a good example of our focus on the "plain and ordinary" meaning of legal text rather than its literal or hyper-technical meaning. *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013). See also *Niz-Chavez v. Garland*, 593 U.S. 155, 168-169 (II) (B) (141 SCt 1474, 209 LE2d 433) (2021) ("[W]hen interpreting this or any statute, we do not aim for 'literal' interpretations. . . . We simply seek the law's ordinary meaning."). The City's position is that "the mayor"

can mean only the person who is serving as mayor, so the notice under this statute must be addressed to that person. The logical conclusion of that position, which the City acknowledged at oral argument, is that any notice under this statute must be put directly into the hands of that person himself, whether by hand delivery or mail that makes its way into his hands. That is perhaps a reasonable argument about the literal meaning of "the mayor," but as an argument about ordinary meaning, it is a hard sell. Indeed, it would have seemed very odd to a member of the public in 2014 (when subsection (f) was enacted) to require a plaintiff to deliver a notice of a lawsuit into the hands of the mayor himself, rather than mailing or delivering it to his office, particularly when the mayor works in an office large enough to serve millions of Georgia residents (e.g., the City of Atlanta). The ordinary meaning of this language is broad enough that the service requirement may be satisfied by addressing a notice to the Office of the Mayor and mailing it to the correct address of that office.

In short, the relevant contextual clues about the meaning of

OCGA § 36-33-5 (f) point to the same answer. A plaintiff suing a municipality may satisfy the service requirement for the ante litem notice by mailing the notice to the address where the mayor works and addressing it to the "Office of the Mayor." The plaintiff does not have to make sure that the notice gets into the hands of the mayor personally, whether by addressing it specifically to the mayor by name or otherwise.

(b) The Court of Appeals' contrary view — that the notice "must actually be addressed to" the mayor or chairperson individually to meet subsection (f)'s service requirement — appears to be driven mostly by Court of Appeals precedent holding that a claimant must "strictly comply" with subsection (f)'s service requirement. See *Fleureme*, 371 Ga. App. at 421-423 (1)-(2) (citing *GA HY Imports*, 348 Ga. App. at 891 (1)). We take this opportunity to address that precedent.

As an initial matter, we doubt seriously that "strict compliance" with subsection (f) is required, as *GA HY Imports* held. That idea appears nowhere in the statute itself. And precedent of this

Court reaching back more than a century has held that "*substantial compliance with the [municipal ante litem notice] statute is all that is required.*" *Owens v. City of Greenville*, 290 Ga. 557, 561 (4) (722 SE2d 755) (2012) (emphasis added) (quoting *Atlanta Taxicab Co. Owners Assn. v. City of Atlanta*, 281 Ga. 342, 352 (5) (638 SE2d 307) (2006)). See also, e.g., *City of Arlington v. Smith*, 238 Ga. 50 (2) (230 SE2d 863) (1976); *Aldred v. City of Summerville*, 215 Ga. 651, 653 (113 SE2d 108) (1960); *Langley v. City Council of Augusta*, 118 Ga. 590, 600-601 (11) (45 SE 486) (1903). Although subsection (f)'s service requirement was added to the statute in 2014, it is hard to see why that provision would warrant different treatment from the rest of the statute. *GA HY Imports* reasoned that "[i]f substantial compliance with subsection (f) was all that is required (i.e., service of notice on other individuals or entities associated with the municipal corporation other than those specified in subsection (f) would be sufficient), then there was no purpose in enacting subsection (f), at least not with the use of the directive 'shall,' which is a mandatory command." *GA HY Imports*, 348 Ga. App. at 891 (1). But the premise of

17

this reasoning — that requiring only substantial compliance would mean that a claimant would not actually have to serve the mayor or chairperson as subsection (f) expressly required — is mistaken. Substantial compliance means that "absolute exactness need not be had," but it still requires "substantive[ ]" *compliance* with the statute. See *Owens*, 290 Ga. at 561-562 (4) (citation and punctuation omitted). A notice that is not even calculated to be "deliver[ed]" to the office of the officials expressly specified in subsection (f) would not substantially comply with its service requirement. And that leaves *GA HY Imports* without any basis for its holding that "strict compliance with OCGA § 36-33-5 (f) is required." 348 Ga. App. at 891 (1).

But even assuming that holding is correct, it does not follow that mailing a notice to the address where the mayor works, addressed to the "Office of the Mayor," cannot satisfy the service requirement. The concept of "strict compliance" has to do with how precisely a claimant's notice must conform to the statutory require-

18

ments. As we have applied the concept to the similar ante litem provision of the Georgia Tort Claims Act, we have said it means that the notice simply must "compl[y] with the plain language of the ante litem notice provisions." *Cummings*, 282 Ga. at 827. (This is in contrast to substantial compliance, which requires the notice to be "substantively sufficient," *Atlanta Taxicab Co. Owners Assn.*, 281 Ga. at 352 (5).) "Strict compliance" has nothing to say, however, about how to *interpret* the statute in the first instance. We have rejected before the notion that "strict compliance" demands a "hyper-technical construction that would not measurably advance the purpose" of the ante litem notice provisions. *Cummings*, 282 Ga. at 824. See also *Board of Regents of Univ. Sys. of Ga. v. Myers*, 295 Ga. 843, 846 (764 SE2d 543) (2014) ("Nor does strict compliance take precedence over the plain language or meaning of the statute.") (cleaned up). Instead, the requirements of the municipal ante litem notice statute, including the service requirement, must be construed like any other statute: according to its plain and ordinary meaning, taking into account the relevant context and rules of statutory construction. See, e.g.,

*Deal*, 294 Ga. at 172 (1) (a); *Islam*, 321 Ga. at 32; *State v. Harris*, 319 Ga. 665, 667 (906 SE2d 402) (2024). The concept of "strict compliance" does not warrant any deviation from that well-settled approach to statutory construction. To the extent that decisions of the Court of Appeals suggest otherwise — by concluding that a statute that requires "strict compliance" must be interpreted in a hypertechnical way — they are disapproved.

\*

For the reasons set out above, mailing the notice required by OCGA § 36-33-5 by statutory overnight delivery, addressed to the "Office of the Mayor" at the correct address, satisfies that statute's service requirement. This means that, contrary to the decision below, Fleureme's notice in this case satisfied that requirement.

*Judgment reversed and case remanded. Peterson, CJ, Warren, PJ, and Bethel, Ellington, McMillian, LaGrua, and Colvin, JJ, concur.*